[Louisville & Nashville Railroad Co. v. Chamblee.]

# Louisville & Nashville Railroad Co. v. Chamblee.

## Damages for Injury to Employee.

Decided Dec. 1, 1910.   Rehearing denied Feb. 16, 1911.
54 South. 681.)

1. *Death; Action; Limitation.*—The general statute of limitations of one year applies to an action by the personal representative of an employe against an employer brought under the Employer's Liability Act, for damages for the death of the employe.

2. *Same.*—In an action under the Homicide Act to recover for death by wrongful act the burden is upon plaintiff to affirmatively show that the action was so commenced within two years from decedent's death. (Sec. 2486, Code 1907) ; the commencement of an action within that time being of the essence of the right of action and not merely a limitation upon the remedy.

3. *Same; Complaint.*—In an action by an administrator against a railroad company for causing the death of intestate, an employe, a complaint alleging that on a certain date, when intestate, a watchman, was on defendant's premises under a license from it, he was pulled or pushed down by an employe of defendant acting within the scope of his authority, and that such employe willfully or wantonly pulled or pushed intestate down and dragged him up certain steps, and that by reason thereof, intestate was so injured that he died, states a cause of action for wrongful death under section 2486, Code 1907.

4. *Same; Proximate Cause; Concurrent Negligence.*—An employer would be liable for the death of an employe whether the death was caused solely by the wrougful act of another employe, or whether such act concurred with the effect of a surgical operation theretofore performed on decedent in causing death.

5. *Master and Servant; Injuries to Servant; Homicide Act; What Law Governs.*—The right of a personal representative of a deceased employe to recover for the injuries resulting in his death in an action against the Employer under the Homicide Act must be determined by the common law rule and not by the Employer's Liability Act.

6. *Same; Assumption of Risk; Negligence of Fellow Servant.*—At common law an employee assumed the risk of injury from the negligence of a fellow servant.

7. *Same; Necessity of Pleading.*—It is not necessary that the employer specially pleads that an employe was injured by the negligent act or omission of a fellow servant in order to rely thereon as a defense.

8. *Same; Existence of Relations.*—It is not always essential that an employe be actually engaged in performing specific duties in order

[Louisville & Nashville Railroad Co. v. Chamblee.]

to make applicable the rules of law governing to determine his rights, and the employer's liability, where he is injured while actually en gaged in the performance of his duties.

9. *Same; Jury Question*—Where an employe, when injured, was upon the employer's premises at an unreasonably early hour for his actual work, or to begin preparation for his work, it was a question for the jury to determine whether the relation of master and servant, and hence, that of a fellow servant with a night watchman, existed or not when he was injured.

10. *Same; Jury Question.*—Where the evidence as to whether or not an employe was engaged in the service of his employment when injured, so that the relation of master and servant existed, is not conclusive one way or the other, the question becomes one for the jury under proper instruction.

11. *Same; Sufficiency of Evidence.*—Upon the issue of the scope of authority of the assaulting employe, alleged to be night watchman, previous acts by such employee in his capacity as night-watchman, in which capacity he acted, when assaulting intestate, if reasonably related in point of time to the assault in question, were admissible.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by Amelia F. Chamblee, administratrix, against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Af firmed.

The fourth count, as amended, is as follows: "Plaintiff, suing as administratrix of the estate of W. M. Chamblee, deceased, claims of defendant the like sum of $20,-000 as damages, for that on, towit, the 17th day of October, 1907, the defendant was a corporation owning railroad shops in New Decatur, Alabama, and on said date plaintiff's intestate was on the premises of the defendant in its railroad shops in New Decatur, Alabama, under the license of defendant, and while on said premises he was pulled or pushed down by one H. J. Jones, an employe of defendant, and who was acting within the scope of his authority, and was by the said Jones then dragged up the steps and into the office of the master mechanic of the defendant in its said railroad shops, and that said Jones willfully or wantonly pulled or push-

ed plaintiff's intestate down and dragged him up said steps as alleged; and plaintiff avers that by reason of said act of said Jones her intestate was so hurt and injured that he died on, to wit, October 30, 1907," This count was filed April 7, 1909, and on October 6, 1909, plaintiff amended her complaint so as to strike therefrom counts 1 and 2 which seem to have been filed January 20, 1909.

It was shown that defendant died of strangulation of the bowels, and this is caused by a sudden jar or jerk or outside pressure brought to bear. It seemed from the facts in the case that Chamblee was one of the night watchmen at the railroad shops of the Louisville & Nashville at New Decatur; that the night shift went on about half past 5 o'clock, and that some time just previous to that time Mr. Jones, who was the head watchman, Mr. Chamblee, and another were in consultation at the shop, and that for some reason not stated Mr. Jones and the other grabbed Mr. Chamblee, pulled him in at the door and up the step into the office of the master mechanic, and that he was dragged along the steps upon his stomach; that Jones was chief night watchman, and that he had a right to hire and discharge men, and that all the watchmen were under him. The evidence for defendant tended to rebut this, and also tended to show that there had been a previous operation for appendicitis, or something of that character, and that this caused the strangulation.

JOHN C. EYSTER, for appellant. The defendant's plea of limitation should have been sustained, and the affirmative charge given as the complaint originally filed was under the Employe's Liability Act. and barred within a year.—*O'Kief v. M. & O.* 99 Ala. 524; Sec. 4840, Code. Count 4 was not sustained by the evidence.—

[Louisville & Nashville Railroad Co. v. Chamblee.]

What Mr. May may have done to other men at other times was not admissible.—*L. & N. R. R. Co. v. Young* in MSS. The question to the witness Jones as to taking other men before the master mechanic was immaterial.—*L. & N. v. Young,* supra. Charges 12 and 28 should have been given.—*Southworth v. Shea,* 30 South. 774. The act of Jones must have been the proximate cause of the death of intestate.—*Thompson v. L. & N.* 91 Ala. 496;*Armstrong v. Montgomery St. Ry.* 123 Ala. 247; *Western Ry. v. Mutch,* 97 Ala. 196; *Mehaffey, v. D.C. W. & M. F. Co.* 128 Ala. 255; *Crowley v. West End,* 149 Ala. 616. The other charges requested should have been given.—*L. & N. v. Markee,* 103 Ala.; *Foshee's case,* 125 Ala.

CALLAHAN & HARRIS, for appellee. Count 4 was under the Homicide Act and the other counts were withdrawn, and hence, the statue of limitations is two years. —Sec. 2486, Code 1907. Count 4 stated a good cause of action as amended.—*M. & O. v. Seals,* 100 Ala. 374; *A. G. S. v. Frazer,* 93 Ala. 48; *So. Ry. v. Wildman,* 119 Ala. 571. The plaintiff was not an employe at the time of his injury, but was there by invitation of the defendant, and the liability of the defendant was governed accordingly.—*Pioneer M. & M. Co. v. Talley,* 152 Ala. 162; 52 L.R.A.826; 51 L.R.A.389; 35 South. 864; 75 Am. Dec. 788. The question as to the former acts of Jones, were so nearly related in point of time, and bore upon the issue of the scope of his authority so as to be admissible.—*Robinson & Co. v. Greene,* 43 South, 798; *B. M. R. R. Co. v. T. C. I. R. R. Co.* 127 Ala. 145; *S. & N. v. Henline,* 52 Ala. 610. Charges 12 and 28 were well refused.—*L. & N. v. Jones,* 83 Ala. 77; *Thompson's case,* 91 Ala. 499; *Medley v. The State,* 47 South. 218; *Morris*

*v. McClellan,* 45 South. 645. The motion for a new trial came too late.—*Ex parte James,* 125 Ala. 119; *Ex parte H. A. & B. R. R. Co.* 105 Ala. 221.

McCLELLAN, J.—Since the ruling in *O'Kief v. M. & C. R. Co.,*99 Ala.524,12 South.454,it has been established that the general statute of limitation of one year applies to bar a recovery for injury resulting in death, where the action is brought by the personal representative of the servant against the master under the employer's liabilities statute (Code 1907, §§3910-3913). The two readoptions of the pertinent statutes, including the general limitation put upon actions for general injuries, without change important in this regard, remove the possible inquiry first presented in *O'Kief v. M. & C. R. Co.* from further investigation. The question is settled as the statutes stand. Where, however, the cause of action declared on by the personal representative is not set forth under the employer's liability statute, but is drawn under the homicide act (Code 1907 §§ 2486), two years "from and after the death of the testator or intestate," by express provision of the homicide act, is the period within which the action must be commenced. This period of two years is of the essence of the newly by the statute conferred right of action, and the plaintiff has the burden of affirmatively showing that his action was commenced within the period provided. It is not a limitation against the exercise of the remedy only. Tiffany's Death by Wrongful Act.§ 121; *Rodman v. Mo. Pac. Ry. Co.,* 65 Kan. 645, 70 Pac. 642, 59 L. R. A. 704, 706, 707; *The Harrisburg,* 119 U. S. 199, 214, 7 Sup. Ct. 140, 30 L. Ed. 358; 8 Am. & Eng. Ency. Law, p. 875; 13 Cyc. p. 339. Accordingly the general statute of limitation of one year against actions for personal injuries though resulting fatally is entirely inapt when sought

to be pleaded to an action under the homicide act. Where the injury, resulting in death, is to the servant while engaged in the service of the master, his personal representative may rest his action upon the right and remedy provided by the homicide act; but, when he does so, the right to recover must be determined by the common law rules, without reference ·to or reliance upon the employer's liability act.—*Northern Alabama R. Co. v. Mansell,* 138 Ala. 548, 560, 561, 36 South. 459. In such case the servant's personal representative cannot recover if the injury resulting in the servant's death was proximately caused by the negligent conduct or ommission of a properly selected or retained fellow servant; since at common law the injured servant assumes on entering the employment the risk of injury from the negligence of such a fellow servant.—*Northern Alabama Railway Company v. Mansell, supra.* If the fatally injured employe was not when injured in the service of the defending master, then obviously the co-employe, where negligent conduct or omission caused his death, could not have been the fellow servant of the fatally injured employe, whatever else may have been the relation of such derelict coemploye to the common employer, and however otherwise the wrong or negligence of the derelict coemploye may have been imputable to the employer. When, under all circumstances, an employe is in the service of the employer, is not susceptible, we think, of reduction to general, governing rule.   From a full and careful review of many authorities, it can be said, with a satisfactory degree of assurance of soundness, that actual application of the energy or attention of the employe to the specified duties designated for his performance is not invariably essential to subject the employer and employe to the rules of law, and to the consequences wrought out by the· rules of law, applic-

able to the determination of the rights and liabilities, respectively, of the employe and of the employer where the former suffers injury while actually applying his energy or attention to the service stipulated or required by the employer for his performance. This conclusion has been attained in consequence of the very generally accepted view prevailing, and upon sound reason, we think, with a large number of courts of this country, in cases where the injured employe was going to or from the place of his employment, or where his actual service had been suspended during the work day or night, and the question was in many of the cases, whether the cause of the injury was the negligent conduct or omission of a properly selected or retained fellow servant, the risk of injury from the negligent conduct or omission the injured coemploye having at common law assumed. Among the sources of legal information consulted on this subject were 2 Labatt on Master & Servant, §§ 624, 625, 625a, and copious annotations thereto; 2 Bailey on Master & Servants, § 3208 et seq., and notes thereto. In addition to these, reference may be had to *Pioneer Mining Co. v. Talley,* 152 Ala. 162, 43 South. 800, 12 L. R. A. (N. S.) 861; *Washburn v. N. C. & St. L. Ry.,* 3 Head (Tenn.) 638, 75 Am. Dec. 784; *L. & N. R. R. Co. v. Wade,* 46 Fla. 197, 35 South. 863. It will be seen from the decisions delivered, and to which we refer above that each case has suggested to the judical mind dealing with it the solution either by pronouncement upon the undisputed facts as a matter of law or by the affirmation that the issue was or was not as the case was properly submitted to the jury for their determination.

Unless the evidence upon the issue whether the injured employe was in the service at the time of his injury is one way or the other conclusively in point of fact or

from necessary inference from facts and circumstances shown, its determination is for the jury. *Packet Co. v. McCue* 17 Wall.508, 514; 21 L. Ed. 705; *Walbert v. Trexier,* 156 Pa. 112, 27 Atl. 65. In the former case, McCue, a laborer, was employed to assist in loading a steamer. After fully performing the specific duties for which he was engaged, McCue went, as directed, on the vessel to get his compensation therefor. After being paid, he started over the gangway plank. It was pulled in by men on the vessel, and he was thrown against the dock and injured. It was insisted for the company that Mc-Cue's injury was caused by his fellow servants. The Supreme Court, Justice Davis writing, ruled that the inquiry whether McCue's emplowment had terminated when he was injured as stated was properly submitted to the jury, the concession, in argument, being that, if it had terminated, the company was liable, since the exemption from liability because of common employment did not then prevail; and affirmed the judgment for the plaintiff. The latter decision involved a status of fact and circumstance somewhat similar to that presented by the case at bar. The defendants, the Trexiers, were manufacturers of staves, and Walbert was in their employ; his work being that of a jointer of staves under an open shed. His machine for that service was operated with his foot. He had no connection, in the employment, with the engine or the boiler. An explosion, caused, it was claimed, by a leak in the boiler, resulted in his death. This took place between 6:06 and 6:20 a. m. The hour for deceased to begin work was 6:30 a. m. According to the evidence, deceased was in the boiler room, or on the threshold of its door, when killed, and it was further shown that he had been in the habit of grinding the knife, with which he worked, on a stone in the

boiler room. It was insisted for appellants that the employer's liability did not begin until the employe's service had actually begun. The court ruled to the contrary, holding that the issue under the evidence was for the jury. While the cases are not identical in point of fact, the following expressions of the learned court, Justice Mitchell writing, seem to be especially applicable to the case at bar: "While the appellants' contention that the employers' liability does not begin until the employe's service has actually begun is in general entirely sound, yet the rule cannot be held absolutely to the stroke of the clock. The deceased lived a mile away from the works. In strict law he was bound to be there when the whistle blew, and he was entitled to a reasonable margin in arriving so as not to be late.   *   *   *   The learned judge told the jury that the employer owed no duty to one who came at an unreasonable hour, and, if Walbert came an hour or two before his time and sat around with other people, he was not in line of his duty, but declined to say as matter of law that such was the case here, and left that fact under all of the evidence to the jury. In this he was right."

Count 4 as last amended stated a cause of action under the homicide act. It was introduced, by amendment, within the two years prescribed by that act. The evidence fixed the date of the death of intestate within that period before count 4 was filed. Under the practice and rule established in *Alabama Con. C. & I. Co. v. Heald*, 154 Ala. 580, 45 South. 686, the amendment, wrought by the introduction of count 4, was properly allowed. A general traverse of amended count 4 was interposed, thereby without special plea putting in issue the inquiry whether intestate's fatal injury was proximately caused by the negligent act or omission of a fel-

low servant of intestate; and, if so, the plaintiff could
not prevail, for risk of injury, with the limitation before
stated, from that source intestate at common law assum-
ed.—*Northern Ala. Ry. Co. v. Mansell,* 138 Ala. 548, 561,
36 South. 459, treating plea 5 to the complaint in that
cause. In accord with *Northern Ala. Ry. Co. v. Man-
sell,* on this point, viz., that the exemption of the com-
mon employer from liability for an injury to an em-
ploye caused by the negligent act or omission of a co-
employe need not be specially pleaded, are the follow-
ing authorities: *Wilson v. Charleston & S. Ry. Co.,* 51
S. C. 79, 28 S. E. 91; *Cin., N. O. & T. P. Ry. Co. v. Lew-
ellen* (Ky.) 32 S. W. 958; *Sheehan v. Prosser,* 55 Mo.
App. 569, 575; *Kaminski v. Tudor Iron Works,* 167 Mo.
462, 470, 471, 67 S. W. 221; *Wiggins Ferry Co. v. Blake-
man,* 54 Ill. 201; *Sayward v. Carlson,* 1 Wash. St. 29, 39,
40, 23 Pac. 803. Reference to 26 Cyc. p. 1402, and to 13
Ency. Pl. & Pr. p. 413 will show that a different view has
prevailed with other tribunals than those delivering the
decisions cited above. One of the cases of the opposing
line of decisions is *Duff v. Willamette Steel Works,* 45
Or. 479, 78 Pac. 363, 668, where the question is elabor-
ately considered. The ruling in this particular made in
*Northern Ala. Ry. Co. v. Mansell, supra,* is rested on
sounder reason, and is we think undoubtedly correct.
The affirmative charge, requested by defendant, could
not, as appears, have been properly given on the theory
that the limitation of one year barred the cause of ac-
tion declared on in count 4 as last amended. Nor could
it have been properly given for defendant on the theory
that the watchman—a coemploye of intestate—inflicting
the alleged fatal injury was then a fellow servant of
intestate, the risk of injury from whom intestate as-
sumed under the common-law doctrine.

Omitting reference to other possible considerations affecting the inquiry, whether such was when the alleged injury occurred the relation existing between intestate and the watchman (see *Ga. Pac. Ry. Co. v. Davis,* 92 Ala. 300, 312, 313, 9 South. 252, 25 Am. St. Rep. 47, defining who are fellow servants), it is apparent from the evidence in this transcript that it could not be declared to the jury as matter of law that when injured or just prior thereto intestate was in the service of the defendant in such sense as invested him and the defendant with the rights duties, and liabilities usually prevailing as between master and servant. There was evidence tending to show that the injury was inflicted about 4 o'clock—more than an hour before his duties actually began. There was evidence immediately opposed to that just stated. If intestate was upon the premises at an unreasonably early hour for readiness for his actual service, or was there at a time not reasonably referable to preparation to take up his actual duties, and then suffered injury, it was open to the jury to find that he was not in the service of the defendant; and hence was not, in any event, then relationed as a fellow servant to the watchman.

It is insisted for appellant that the affirmative charge was its due on the theory that the evidence showed that the handling of intestate on the occasion by the watch-man was not the proximate cause of his death. There was evidence tending to show that this handling of intestate caused the parting of the casing of the bowels at a place or places where previously a surgical operation had been performed. If the violent treatment alleged to have been received, on this occasion, by the intestate, had the effect to cause his death, or accelerate his dissolution as a consequence of the earlier surgical opera-

[Louisville & Nashville Railroad Co. v. Chamblee.]

tion, the defendant, if shown otherwise to be liable, could not claim exemption from the result of its employe's (watchman's) act in the course of his service to it. *L. & N. R. R. Co. v. Jones*, 83 Ala. 376, 3 South. 902; *Thompson v. L. & N. R. R. Co.*, 91 Ala. 496, 8 South. 406, 11 L. R. A. 146.

*Southworth v. Shea*, 131 Ala. 419 30 South, 774, cited for appellant, has no application in this instance because of the marked dissimilarity in the evidence in each. For like reason, those special charges, requested by defendant, wherein it was hypothesized, in substance, that plaintiff could not recover unless the violence charged was the sole cause of intestate's death, or omitting to exclude, in hypothesis, the idea, supported by the tendencies of the evidence, that the violence received by intestate proximately contributed to his death, were properly refused.

The court, at defendant's request, gave many special instructions confining the plaintiff's right to recover within limits of utmost favor to defendant as regarded the question of proximate cause of intestate's death. It was competent as bearing upon the issue of the scope of Jones' authority—a matter resting in parol—to show previous acts by him in that capacity reasonably related in point of time to that involved in this action.—*Robinson v. Green*, 148 Ala. 434, 43 South. 797; *Birmingham Min. R. R. Co. v. T. C. & I. R. R. Co.*, 127 Ala. 137, 28 South. 679. There was no error in the rulings made by the court in reference to such matter on the trial below. A careful review of the charges refused to the defendant in connection with those given at its instance leaves no room for doubt that no error, prejudicial to defendant, resulted from the refusal of such charges. There is no insistence in brief upon error in overruling the motion for a new trial.

[Louisville & Nashville Railroad Co. v. Andrews]

No prejudicial error appearing in the transcript, the judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.

